IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| KIMKO PROPERTIES LTD. and FRANCIS X. GAUDETTE | ) ) ) | |
| Plaintiff, | ) ) | TC-MD 130087C |
| v. | ) ) | |
| CLACKAMAS COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **DECISION OF DISMISSAL** |

Plaintiffs have appealed the real market value (RMV) of eight undeveloped lots for tax years 2010-11, 2011-12, and the 2012-13. The lots involved identified in the assessor's records as Accounts 05020092, 05020083 through 05020087 inclusive (five lots), 05021911, and 05021912. (Ptfs' Compl at 2.)[1]

Plaintiffs did not timely petition the county board of property tax appeals (Board) for any of the years at issue. Untimely petitions were filed for the 2012-13 tax year sometime in January 2013. (*See generally* Ptfs' Compl.) No petitions were filed with the Board for the two prior tax years. (Def's Ans at 1.)[2] Defendant filed an answer and a motion to dismiss for lack of jurisdiction noting Plaintiffs' failure to timely appeal to the Board for any of the years at issue and stating that "[t]he Complaint does not provide any information that would satisfy the conditions required for a correction under ORS 305.288." (*Id*.)

The court held a case management conference hearing by telephone on May 1, 2013. Francis X. Gaudette (Gaudette), President of Kimco Properties Ltd., appeared for Plaintiffs.

---

[1] Plaintiffs filed a Complaint and an Amended Complaint, each document contained different information and will be cited separately.

[2] Defendant does not specifically use the word jurisdiction in its Answer and Motion to Dismiss, but does note the lack of timely petitions to the Board and the deficiency in Plaintiffs' Amended Complaint regarding the failure to establish jurisdiction under ORS 305.288. (Def's Ans at 1.)

(Ptfs' Compl at 3.)  His daughter Margaret sat in on the proceeding, but did not testify.  The court placed Gaudette under oath to receive testimony pertaining to Defendant's motion.

## I.  STATEMENT OF FACTS

Plaintiffs own a lot of property in Oregon.  Those properties generate a lot of tax statements.  Gaudette testified that in 2010 Plaintiffs owned in excess of 200 properties in Oregon, including (or perhaps "plus") 115 rental homes.  The lots and homes are located throughout the state in three primary areas: the Portland metropolitan area, Coos Bay, and Prineville.  Those locales are all a considerable distance from each other (the north end of Oregon's Willamette Valley, the southern portion of Oregon's coast, and central Oregon).  Gaudette, or Kimco Properties Ltd., also owns or has an interest in a restaurant.[3]  Gaudette did not testify about the organizational structure of the legal entity Kimco Properties Ltd., and the court therefore has no knowledge of whether Gaudette, who was the president of Kimco, had any other partners or corporate officers.  Gaudette testified that there were three employees in the office at one time, but they were let go by Gaudette's brother in 2010 because of the company's financial difficulties.

This appeal involves only the eight undeveloped lots, which are located in Estacada, Oregon.  (Ptfs' Compl at 5, 13, 20.)[4]  Gaudette testified that the eight lots are part of an 18 lot subdivision which was and is only partially developed.  Ten houses were constructed in that subdivision.  Four of those homes sold; Gaudette testified that "he" rents the other six because he

---

[3] It is difficult to know from the Gaudette's testimony whether the properties are owned by Kimco Properties Ltd., Gaudette, or a combination of the two and, for that matter, whether some of the properties might be owned by other ventures.

[4] Plaintiffs' original Complaint, in excess of 60 pages, includes copies of the petitions filed with the Board, each of which identifies the location of the property as the town of Estacada.  The court has only noted the page numbers for 3 of the 8 lots under appeal, but all of the lots are in the same subdivision, foreclosing any question as to the town in which they are located (to the extent such detail as necessary).

was unable to sell them. Gaudette testified that "he" bought the 18 undeveloped lots in 2006 or 2007 and, after hiring a contractor to put in the infrastructure (streets, water, sewer, electric, etc.) had 10 homes built. The eight lots were listed with a realtor for sale in 2012 (and perhaps both before and after) for $30,000. (Test of Gaudette, Ptfs' Compl at 15, 18.) They were on the tax rolls for the years at issue for various values that appear to have each been lowered annually by the assessor, but to have all exceeded $50,000 at their lowest point, with one lot (Account 5020092) valued at approximately $150,000 for the 2010-11 tax year. (*See generally* Ptfs' Am Compl.) In other words, the RMVs on the assessment and tax rolls were all well in excess of the $30,000 requested values.

Gaudette testified, and the documents attached to the Complaint reveal, that he filed petitions with the Board seeking reductions in the RMV of all eight lots for the 2012-13 tax year. However, as other documents attached to the original Complaint reveal, the petitions were filed after the December 31, 2012, deadline and were dismissed by the Board as untimely. Gaudette testified that he did not file petitions for the two earlier tax years.

Gaudette had a great deal going on in his life in the years leading up to and including the assessment years at issue. Gaudette testified that he was experiencing financial difficulties beginning in 2008 because the real estate market for the many properties he owned had dried up and he was unable to pay lenders. He also did not pay the property taxes on many of the properties dating back at least to the 2010-11 tax year and possibly for a few years before then.

Gaudette was also diagnosed with a cancerous tumor in his head. Doctors at Oregon Health Sciences University in Portland tried twice to remove the tumor, first in 2008 and again in 2009, performing different procedures each time, neither of which was successful. In 2010 Gaudette traveled to Loma Linda California to undergo proton radiation treatment. He was in

California during the months of March and April 2010 because the radiation treatment required repeated treatments. While Gaudette was in California in 2010 for his cancer treatment, one of the private lenders who had loaned him money to construct houses on lots he owned called in a note for $1.3 million. Also, one of Gaudette's daughters, who suffers from bipolar disease, experienced a severe relapse beginning in January 2010 resulting in her arrest on four separate occasions. Gaudette was ultimately successful in having her committed to a psychiatric hospital for 21 days of observation prior to leaving for California for his cancer treatment.

Gaudette was also twice audited by the IRS; the first audit occurring sometime in 2009, the second beginning on or about January 2010 and continuing for roughly six months that year.

In 2011, Gaudette became involved in divorce proceedings starting in April or May, and which were still pending at the time of the hearing with this court on May 1, 2013.

## II. ANALYSIS

Oregon's property tax appeal system contemplates an annual challenge to the value of the property by first filing a petition with the Board after the tax statements are mailed each year (in October) and before December 31. *See e.g.* ORS 309.100 and ORS 309.026(2).[5] A taxpayer who timely petitions the Board and disagrees with the outcome can file an appeal with the Tax Court, Magistrate Division, pursuant to ORS 305.275 (providing for appeals to the magistrate division of the tax court by persons aggrieved by an order of the Board) and ORS 305.560 (Tax Court appeal procedure generally), doing so within 30 days of the date the Board mails its order as provided in ORS 309.110(1) (providing for disposition of petitions to the Board by order of the Board) and ORS 305.280(4) (providing for the 30 day appeal period to the Tax Court).

---

[5] Unless noted otherwise, the court's references to the Oregon Revised Statutes (ORS) are to 2011.

Without other statutory authority, a taxpayer's failure to properly (timely each year) pursue the statutory right of appeal by first going to the Board and then the Tax Court, would be left without a remedy for the year the process was not correctly followed. However, the legislature determined that certain extraordinary circumstances exist that merit the court's review and allow for changes in value where warranted.

In the case of unimproved land, this court has been given the statutory authority to review untimely appeals when the taxpayer establishes "good and sufficient cause" for not timely pursuing that statutory right of appeal. ORS 305.288(3).

ORS 305.288(3) provides:

"The tax court may order a change or correction * * * to the assessment or tax roll for the current tax year and for either of the two tax years immediately preceding the current tax year if, for the year to which the change or correction is applicable, the * * * taxpayer has no statutory right of appeal remaining and the tax court determines that *good and sufficient cause exists for the failure by the * * * taxpayer to pursue the statutory right of appeal*."

(Emphasis added.)

That statute defines good and sufficient cause as follows:

"Good and sufficient cause:

"(A) Means an *extraordinary circumstance that is beyond the control of the taxpayer, or the taxpayer's agent or representative*, and that causes the taxpayer, agent or representative to fail to pursue the statutory right of appeal; and

"(B) Does not include inadvertence, oversight, lack of knowledge, hardship or reliance on misleading information provided by any person except an authorized tax official providing the relevant misleading information."

ORS 305.288(5)(b) (emphasis added).

Notwithstanding the rather compelling personal problems Gaudette was facing, the court is unable to conclude that good and sufficient cause exists for two primary reasons. First, Gaudette candidly testified that he thought the deadline to file a petition with the Board was at

the end of January rather than the previous December. Second, the property at issue is owned by a corporation that at one time had at least three employees. Gaudette testified that he had a brother who was helping him at the business and in fact was the one that made the decision to terminate the three employees in 2010. At other points in his testimony Gaudette used the plural "we" when referring to the properties he is involved with. That suggests that there may have been one or more partners or officers involved in the entity operating as Kimco Properties Ltd. Thus, while the court was moved by the testimony and considered a "totality of the circumstances" approach, upon reflection, the court finds that it must avoid that approach in this case and conclude that the reason for the lack of appeals in 2010 and 2011, and the untimely board petition in 2012, was due to either inadvertence or lack of knowledge or both. Gaudette acknowledged during the hearing that the many problems he was facing caused him to "prioritize" and that when the tax statements arrived in 2010 and 2011 he put them in a pile because he was unable to pay the taxes. Gaudette testified that he did not even review those statements. While that is an understandable reaction given that he appears to have received in excess of 200 tax statements each year, and had considerable stress in his personal life, the level of real estate business activity Plaintiff was engaged in comes with a corresponding level of responsibility, including reviewing tax statements and timely challenging values if they appear out of line.

/ / /

/ / /

/ / /

/ / /

/ / /

### III. CONCLUSION

After careful consideration, the court concludes that Defendant's motion to dismiss should be granted because Plaintiff did not properly appeal the value of the eight lots at issue for any of the three tax years under appeal (2010-11, 2011-12, and 2012-13) and the facts do not show that the failure to properly pursue the right of appeal was due to extraordinary circumstances beyond Plaintiffs' control. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of May 2013.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision of Dismissal was signed by Magistrate Dan Robinson on May 8, 2013. The Court filed and entered this Decision of Dismissal on May 8, 2013.*